UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KHRISTINA DAVIS,

      Plaintiff,

vs.                                                                     Case No. 3:07-cv-705-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

      Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED** for proceedings not inconsistent with this opinion.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") on March, 16, 2004, alleging an inability to work since July 2, 2003. (Tr. 61-63; 917-19). The Social Security Administration ("SSA") denied Plaintiff's claim through two administrative review stages. (Tr. 35-41). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on April 7, 2006. (Tr. 960-89). On June 20, 2006, the ALJ

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 14).

issued a decision finding Plaintiff was not disabled. (Tr. 14-24). By a decision dated June 1, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 5-7). Having exhausted all administrative remedies, Plaintiff filed this case seeking judicial review of the ALJ's decision under 42 U.S.C. § 405(g). Accordingly, the matter is now ripe for judicial review.

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since July 2, 2003, due to an inability to sustain work on a regular and consistent basis as a result of pain following multiple stomach surgeries, migraines, and back and knee impairments. (Doc. 18, p.3). She also claims disability due to mental limitations as a result of a depression/affective disorder. Id.

### B.    Summary of Applicable Evidence Before the ALJ

Plaintiff was 26 years of age at the time the ALJ conducted the administrative hearing. (Tr. 965). She has a high school education and took some college classes. Id. Her past work includes employment as an able seaman, boat mechanic, attendant, and cashier. (Tr. 985-86). Plaintiff asserts she became disabled on July 2, 2003 due to stomach surgery, liver surgery, Morton's neuroma in her feet, a mood disorder, chronic back pain, endometriosis, migraine headaches, spinal stenosis, patellofemoral syndrome, and sinusitis. (Tr. 20).

As this appeal deals only with Plaintiff's mental impairments, this Court will limit its discussion to the medical evidence regarding Plaintiff's mental impairments. In sum, Plaintiff received treatment at various Veterans Administration ("VA") facilities for mental

impairments. On June 25, 2003, a therapist at the VA noted Plaintiff experienced a dysthymic disorder. (Tr. 644). An evaluation of Plaintiff's mental impairments was subsequently performed on October 23, 2003 by Dr. Garrison of the VA. (Tr. 207-09). During the examination, Plaintiff reported many symptoms such as difficulty sleeping due to fear and sweating, appetite fluctuations, weight gain, decreased energy, confusion, and decreased concentration. (Tr. 208). She also reported she had two recent suicide attempts. Id. Dr. Garrison noted Plaintiff was "suffering from severe symptoms of major depressive disorder and she [was] significantly disabled by these symptoms" and that every aspect of Plaintiff's life was affected by her mental impairments. (Tr. 209).

A psychological evaluation was performed at the VA on February 13, 2004 by Michelle Andra, a psychology resident, and Saundra Saporiti, a staff psychologist. (Tr. 130-32). Plaintiff reported symptoms such as sadness, irritability, anger, apathy, visual hallucinations, and suicidal ideation and attempts. (Tr. 130). The overall impression following the examination was depressive disorder and rule out both a psychotic disorder and post-traumatic stress disorder. (Tr. 131). It was also noted Plaintiff had a GAF score of 50, which the American Psychiatric Association has defined as "serious symptoms or any serious impairment in social, occupational, or school functioning." Id.

On May 18, 2004, Plaintiff underwent a consultative psychological examination with Dr. Osborn. (Tr. 210-14). The examination revealed a dysthymia condition with a "moderate, very slim possibility of psychotic features" as well as some likelihood of paranoid features. (Tr. 213). Dr. Osborn opined Plaintiff could "perform routine, repetitive tasks, interact with coworkers, receive supervision, [and] maintain

concentration and attention." Id.  Additionally, he noted Plaintiff possessed sufficient math skills and intellect to handle her own funds. Id.

Dr. Rowan, a non-examining physician, reviewed the evidence of the record and provided opinions on Plaintiff's functional limitations. (Tr. 225).  She indicated Plaintiff experienced a "moderate" degree of limitation in both maintaining social functioning and maintaining concentration, persistence, or pace. Id.  Dr. Rowan also completed a mental RFC ("MRFC") assessment form indicating a summary of her conclusions. (Tr. 229).  On this form, Dr. Rowan opined Plaintiff was "moderately limited" in the following work-related abilities: understanding, remembering and carrying out detailed instructions; maintaining attention and concentration for extended periods; completing a normal work-day or work-week without interruption from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and interacting appropriately with the general public. (Tr. 229-30).

On July 26, 2005, Plaintiff reported to the VA poor family discord was a current depressive trigger. (Tr. 513).  More stressors were added during mental health therapy on October 17, 2005, during which Plaintiff indicated she had a troubled relationship with her daughter's father and she was upset because of racial distress among her family and from being displaced by Hurricane Katrina. (Tr. 477).  The overall impression following therapy was depression and Plaintiff's daily dosage of prozac was increased. (Tr. 478).

Lastly, the medical records indicate Plaintiff was given a 70% service connected VA disability rating with 30% apportioned to her mood disorder. (Tr. 731).

## C. **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits at least through the date of the decision. (Tr. 19). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, July 14, 2005. Id. At step two, the ALJ

found Plaintiff had the following severe impairments: status-post hepatic lobectomy, a mood disorder, lumbar generative disc disease, and endometriosis.  Id.  At step three, the ALJ determined Plaintiff did not have an impairment, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4.  (Tr. 20).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform light work.  Id.  Specifically, the ALJ found Plaintiff was able to:

> Lift and/or carry 20 pounds occasionally and 10 points frequently. [She] can stand/and or walk 6 hours in an 8-hour workday.  Her ability to push and/or pull including operation of foot and hand controls is unlimited, other than as shown for lifting/carrying above. [She] does not have any postural limitations, manipulative limitations, visual limitations, communicative limitations, or environmental limitations.  She requires work that has mostly to do with data or things rather than people.

Id. In making this determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce the alleged symptoms.  (Tr. 21).  However, Plaintiff's assertions concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible.  Id.

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine if Plaintiff could perform any of her past relevant work.  (Tr. 985-89).  The VE explained Plaintiff could not perform any of her past work.  (Tr. 22). Accordingly, the ALJ proceeded to step five and asked the VE whether Plaintiff could perform other work existing in the national economy.  The VE testified Plaintiff could perform occupations such as a locksmith apprentice and a body wirer.  (Tr. 23). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act.  (Tr. 26).

**III.    ANALYSIS**

    **A.    The Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

The district court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law, or if the decision fails to provide the

district court with sufficient reasoning to determine the Commissioner properly applied the law.  Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).

### B. Issues on Appeal

Plaintiff argues two issues on appeal.  First, Plaintiff asserts the ALJ erred in determining her RFC for two reasons: 1) the ultimate RFC finding that Plaintiff can only perform occupations "mostly to do with data or things rather than people" is inconsistent with the ALJ's determination Plaintiff experienced moderate limitations in her ability to maintain concentration, persistence, or pace; and 2) the ALJ failed to properly address all the medical opinions offered by Dr. Rowan, the state agency non-examining physician.  (Doc. 18, p. 6).  Second, Plaintiff asserts the ALJ also erred by failing to state the weight he provided to the disability rating found by the VA.

The Commissioner responds that SSR 96-8p does not require the ALJ to include in the RFC assessment the limitations identified by Dr. Rowan in the PRTF.  (Doc. 23, p.5). Therefore, because the ALJ was not required to include the PRTF findings of Dr. Rowan or weigh the evidence during his ultimate RFC findings, the Commissioner argues there can be no step five deficiency.  (Doc. 23, p.6).  Moreover, the Commissioner argues that even if the ALJ was required to include Dr. Rowan's opinions at step five, the ALJ addressed them by including the limitation that Plaintiff be required to work around data and things rather than people.  (Doc. 23, p.10).  The Commissioner points to the narrative sections of the PRTF where Dr. Rowan noted Plaintiff could complete simple, routine tasks and could attend to simple directions.  (Doc. 23, p. 6-7).  The Commissioner also points to the  conclusions of Dr. Osborn, an examining physician.  (Doc. 23, p. 7).  Dr.

Osborn opined Plaintiff could perform routine, repetitive tasks, interact with coworkers, receive supervision, and maintain concentration and attention.  Id.  Lastly, with respect to the second issue, the Commissioner argues the VA's 70% service connected disability rating was properly reviewed and evaluated by the ALJ.  Id.

### 1. Whether the ALJ erred in determining Plaintiff's RFC.

The Court will first address Plaintiff's argument that the ALJ erred in determining her RFC because he failed to address the impact of "moderate difficulty in maintaining concentration, persistence, or pace" and adequately explain how this limitation was consistent with his conclusion Plaintiff could perform occupations "mostly to do with data or things rather than people."  In considering an individual with a mental impairment, the ALJ is required to use the "'special technique' dictated by the [Psychiatric Review Technique Form] for evaluating mental impairments."  Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(a)).  This technique requires separate evaluations on a four-point scale of how the individual's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  Id. (quoting 20 C.F.R. § 404.1520a-(c)(3-4)).  The ALJ is required to complete a PRTF and append it to the decision or incorporate the results of this technique into the findings and conclusions of his decision.  Id. at 1214.  Failure to do so requires remand.  Id.  In the instant case, the ALJ did not complete a separate PRTF, but arguably incorporated the analysis into his decision by referencing the PRTF completed by Dr. Rowan.  Specifically, the ALJ stated:

> Jill J. Rowan, Ph.D., the State agency non-examining
> psychologist, upon review of the medical record determined
> that the claimant's mood disorder resulted in a mild restriction

>of activities of daily living; a moderate degree of difficulty in maintaining social functioning; a moderate difficulty in maintaining concentration, persistence, or pace; and no episodes of decompensation.

(Tr. 20).

Plaintiff acknowledges that this reference is sufficient to comply with the requirement that the ALJ perform a PRTF, however, Plaintiff argues the ALJ then failed to apply the limitations noted in the PRTF to Plaintiff's ultimate RFC and the hypothetical posed to the VE. The Commissioner responds that Social Security Regulation 96-8p dictates that the limitations identified in the PRTF are not an RFC assessment but are used at steps 2 and 3 to determine the severity of the mental impairment and whether it meets the criteria of a listed impairment. Therefore, according to the Commissioner, the ALJ is not required to include PRTF limitations in the RFC.

>SSR 96-8p provides:
>
>>The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p. Accordingly, the Commissioner is correct that the limitations noted in the PRTF are not an RFC, however, it does not necessarily follow that they should not be

included in the RFC or considered at steps four and five of the sequential analysis. Instead, the ALJ is required to conduct a more detailed analysis of the four categories listed in the PRTF when formulating the RFC. Here, the only reference to Plaintiff's mental impairment contained in the RFC was: "[s]he requires work that has mostly to do with data or things rather than people." (Tr. 20). It is not apparent that requiring work having to do mostly with data or things rather than people is sufficient to account for the limitations noted in Plaintiff's PRTF: a moderate degree of difficulty in maintaining social functioning and a moderate difficulty in maintaining concentration, persistence, or pace. Restricting Plaintiff's work around people may account for her limitations regarding social functioning, but it is not at all clear how such a restriction would assist with Plaintiff's difficulties in maintaining concentration, persistence or pace. As such, the RFC does not appear to adequately reflect Plaintiff's mental impairment.

However, as this Court recently noted in Corbitt v. Astrue, 2008 WL 1776574, at *3 (M.D. Fla. 2008), when the ALJ relies on the testimony of a VE, "the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE" rather than the RFC simply cited in the ALJ's decision. Id. (citing Dowell v. Barnhart, 2006 WL 4046164, at *3 (D. Kan. 2006)). In the Corbitt case, the ALJ did not include in his RFC the plaintiff's moderate limitations in maintaining concentration, persistence and pace as noted in the PRTF. Corbitt, 2008 WL 1776574 at *2. However, the ALJ did specifically include the moderate difficulty in maintaining concentration, persistence and pace in the hypothetical to the VE. Id. at *3. As such, the Court found no error. Id. Accordingly, this Court will analyze the hypothetical posed by the ALJ in this case.

During the hearing, the ALJ asked the VE to consider a hypothetical individual:

> who is 26, with a high school education, training as a boat mechanic, and who has the past work you have described, and assume a light RFC in work that has mostly to do with data or things rather than people.

(Tr. 986). Clearly, the ALJ did not provide any more description or detail in the hypothetical than he did in his RFC. As such, the hypothetical posed to the VE did not include all of Plaintiff's limitations or restrictions and the ALJ's decision was therefore, not supported by substantial evidence. Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985) (holding that where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence). See also, Ramirez v. Barnhart, 372 F.3d 546, 554-555 (3rd Cir. 2004) (court found hypothetical posed to VE did not "adequately capture and recite all of [the plaintiff's] mental impairments and the limitations caused by those impairments" where ALJ's PRTF included limitation that plaintiff often suffered from deficiencies in concentration, persistence, or pace but the hypothetical employed with the VE only limited the plaintiff to simple one or two-step tasks); Kasarsky v. Barnhart, 335 F.3d 539 (7th Cir. 2003) (court remanded case where ALJ noted on PRTF that the plaintiff frequently suffered from deficiencies in concentration, persistence, or pace but stated in the hypothetical to VE that the plaintiff's mental impairment seriously limited, but did not preclude him from, understanding, remembering, and carrying out detailed instructions. Court noted that there might be an explanation for the omission, but explained that it had "no way of knowing that."). Likewise, in the instant case, there may be a reason the ALJ simply limited Plaintiff to working around data or things rather than people, but this Court has no way of knowing

the reason. Instead, it appears that the ALJ simply chose to disregard the limitation regarding Plaintiff's ability to maintain concentration, persistence or pace. As such, the case shall be remanded to the ALJ with instructions to reconsider Plaintiff's RFC in light of the PRTF and if necessary, pose a hypothetical to a VE which encompasses all limitations arising from Plaintiff's impairments.

Additionally, Plaintiff argues remand is warranted because the ALJ failed to properly consider and address all of the opinions of Dr. Rowan and state what weight he provided those opinions. Specifically, Plaintiff claims the ALJ failed to recognize or state what weight, if any, he gave to Dr. Rowan's MRFC assessment. (Doc. 18, p. 13). The Court agrees that the ALJ failed to discuss Dr. Rowan's MRFC assessment. As the Court is remanding the case for the ALJ to reconsider Plaintiff's mental impairment and how it affects her RFC, the Court will direct the ALJ to specifically address the weight he gives to all of Dr. Rowan's opinions as well as Dr. Osborn's opinions and the reasons therefor.

### 2. Whether the ALJ erred when he failed to state what weight he provided to the disability rating found by the VA.

The ALJ also erred when he failed to state what weight he provided the 70% service connected disability rating by the VA. Although a VA disability rating is not binding, it is evidence that should be given great weight. Hogard v. Sullivan, 733 F.Supp. 1465, 1468 (M.D. Fla. 1990) (citing Olson v. Schweiker, 663 F.2d 593, 597 n. 4 (5th Cir. 1981)). In Hogard, the court concluded remand was warranted for failure to accord the VA disability rating great weight. Id. at 1469. Similarly, in the case of Kieser v. Barnhart, 222 F.Supp.2d 1298, 1314 (M.D. Fla. 2002), the court also noted the VA disability rating should be given great weight and it remanded the case because no weight was originally

accorded to the VA's disability rating by the ALJ.

The same is true in this case. While mentioning the rating, the ALJ failed to discuss the weight he gave it. The Commissioner still would argue that because the ALJ discussed the medical records from the VA the disability rating was given due consideration. (Doc. 23, p. 11). However, the undersigned finds Plaintiff is correct that case law requires more than a mention of the rating. Plaintiff cites to this Court's recent, unpublished decision in Ivory v. Astrue, 3:06-cv-825-J-MCR (June 21, 2007). In Ivory, the Commissioner also argued the ALJ properly considered the VA disability rating by referencing it. Id. This Court disagreed and stated consideration regarding a VA rating "requires more than a mention of the rating." Id.

Here, the only mention of the VA rating by the ALJ was as follows:

> As for opinion evidence, no treating physician has specifically limited [the Plaintiff] in any way. However, the VA has granted [the Plaintiff] a 70% service connected disability.

(Tr. 22). Merely mentioning the VA found Plaintiff had a 70% VA disability rating is not legally sufficient. Thus, Plaintiff's claim is also remanded for proper consideration of the VA disability rating.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. § 405(g). On remand, the ALJ shall address Plaintiff's limitations in her ability to maintain concentration, persistence, or pace and the impact of such limitations upon her RFC. He shall also consider and state what weight he provided to the medical opinions from both the PRTF and the MRFC

offered by Dr. Rowan and, if applicable after consideration of these two issues, proffer a hypothetical to the VE that adequately addresses all of Plaintiff's impairments and resulting functional limitations.  Finally, the ALJ shall state what weight he provided the VA disability rating, which is entitled to great weight.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this  5th  day of August, 2008.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record